**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TULSA POOL BOYS, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 25-CV-614-MTS** |
| | ) | |
| 600MONKEYS POOL LEAK | ) | |
| DETECTION AND REPAIR, LLC, | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Dismiss Amended Petition and Brief in Support (Docket No. 24) filed by Defendants 600Monkeys Pool Leak Detection and Repair, LLC, James Thalacker, and Jade Brewer. After considering the parties' briefing on the matter and the applicable caselaw, Defendants' Motion to Dismiss is hereby **DENIED**.

**Background and Procedural History**

On December 26, 2025, Plaintiff Tulsa Pool Boys LLC ("Plaintiff") filed its First Amended Complaint against Defendants 600Monkeys Pool Leak Detection and Repair, LLC ("600Monkeys"), James Thalacker, and Jade Brewer (collectively "Defendants").[1] (Docket No. 19). Plaintiff brings claims for relief against Defendants under the Lanham Act, the Oklahoma Deceptive Trade Practices Act, the Defend Trade Secrets Act ("DTSA"), and the Oklahoma Uniform Trade Secrets Act, as well as claims for civil conspiracy, breach of contract, and breach of fiduciary duty. *Id*. at 12-24. Plaintiff seeks injunctive relief, actual and punitive damages, and attorney's fees and costs against Defendants. *Id.* at 2.

---

[1] The original Complaint was filed on November 12, 2025. (Docket No. 2).

According to the Amended Complaint,[2] Plaintiff "performs pool leak detection and repair services throughout the Tulsa metropolitan area." (Docket No. 19 at 3). Additionally, it maintains a website wherein it provides information on its services and markets those services, including through a "Google Ad Search Campaign," which allows for Plaintiff to appear on Google search results when a term or word it has bid on is queried. *Id.* Plaintiff alleges that these marketing efforts "enable[s] it to reach potential customers throughout the United States" and has resulted in inquiries from potential out-of-state clients, multiple out-of-state leads who became clients, and provided the means for out-of-state residents to research its services. *Id.* at 3-4. Further, Plaintiff contends that it is "regularly engaged" by a pool inspection company to perform both pool leak detection and repair services for out-of-state residents, who can later "research" Plaintiff through its online marketing efforts. *Id.* at 4.

Plaintiff alleges that it hired Defendant Brewer in November 2023, and that almost immediately after terminating his employment in September 2024, he began working as an independent contractor and performing the same services as Plaintiff.[3] *Id.* at 6. According to Plaintiff, Defendant Brewer not only utilized Plaintiff's trade secret information to solicit business from Plaintiff's customers, but he also "marketed his services by . . . posting photographs of [Plaintiff's] projects that he passed off as his own on public websites[.]" *Id.* at 7, 13, 19-20. Plaintiff further asserts that it provided a quote to Defendant Thalacker in mid-January 2025, as a potential client, and by the end of January 2025, Defendants Brewer and Thalacker "began discussing the formation of a company that would perform the same types of pool leak detection

---

[2] The Court limits its discussion of the factual allegations in the Amended Complaint to those allegations that are pertinent to Defendants' motion.

[3] Although not pertinent to the motion before the Court, Defendant Brewer signed a Non-Compete Agreement with Plaintiff in March 2024. *Id.* at 5.

and repair services that [Defendant] Brewer had been performing while employed by [Plaintiff]." *Id.* at 8.

Plaintiff maintains that on March 5, 2025, Defendant Thalacker formed 600Monkeys LLC and hired Defendant Brewer in a managerial role. *Id.* at 9. It alleges that 600Monkeys utilized the same marketing efforts as Plaintiff and Plaintiff's trade secret information, which enabled 600Monkeys to reach the same potential customers throughout the United States. *Id.* at 9, 20. Additionally, Plaintiff contends that "[s]oon after its formation, 600Monkeys began posting photographs of [Plaintiff's] projects on public websites . . . and passing them off as work performed by 600Monkeys." *Id.* at 9, 13.

On January 27, 2026, Defendants filed their Motion to Dismiss Amended Petition. (Docket No. 24). Defendants seek dismissal of Plaintiff's federal claims brought under the Lanham Act and the DTSA. *Id.* at 3-7. Defendants contend that because neither Act applies, the Court lacks federal question jurisdiction, and the matter should therefore be dismissed. *Id.* at 1, 3, 7. On February 17, 2026, Plaintiff filed its Response to Defendants' Motion to Dismiss Amended Petition, asserting that it has stated plausible claims under both the Lanham Act and the DSTA, and Defendants' motion should be denied in its entirety. (Docket No. 25 at 12, 15). As such, Defendants' motion is now ripe for review.

## **Legal Standard**

The Court evaluates Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

---

[4] Defendants' motion does not expressly indicate whether they seek dismissal of Plaintiff's federal claims under Rule 12(b)(6) and/or Rule 12(b)(1). (*See* Docket No. 24). However, Defendants' motion only implicates Rule 12(b)(1) to the extent that the Court's subject matter jurisdiction is based upon federal question jurisdiction created by Plaintiff's alleged claims under the Lanham Act and the DTSA and the exercise of supplemental jurisdiction over Plaintiff's state law claims.

662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

---

(*See* Docket Nos. 19 at 2; 24 at 1, 3). In any event, the Court finds that the motion should be considered under Rule 12(b)(6). *See, e.g.*, *Traditions Health, LLC v. Huffman*, No. 24-CV-0163-CVE-MTS, 2024 WL 5078110 (N.D. Okla. Dec. 11, 2024) (evaluating a DTSA claim under the Rule 12(b)(6) standard); *Select Energy Servs., Inc. v. Mammoth Energy Servs.*, No. CIV-19-28-R, 2019 WL 1434586 (W.D. Okla. Mar. 19, 2019) (same); *Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15CV307DAK, 2017 WL 3995558 (D. Utah Sept. 8, 2017) (evaluating a Lanham Act claim under the Rule 12(b)(6) standard); *Raptor Educ. Found. v. Rocky Mountain Raptor Program*, No. 10-cv-01222-WDM-MJW, 2010 WL 4537119 (D. Colo. Nov. 3, 2010) (same).

**Discussion**

**A.    Lanham Act**

Defendants first seek dismissal of Plaintiff's claim for violation of the Lanham Act. (Docket No. 24 at 3-6).  The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin . . . of his or her goods, services[.]"  15 U.S.C. § 1125(a)(1)(A).  Two types of false designation of origin claims are recognized: passing or palming off and reverse passing off.  *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003) (citations omitted).  While passing off concerns a party's misrepresentation of his goods or services as someone else's; reverse passing off occurs when a person "misrepresents someone else's goods or services as his own."  *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1303 (D. Utah 2020).

**1.  Use in Commerce**

To establish liability under the Lanham Act, a defendant's misrepresentation must occur in commerce.  *See* 15 U.S.C. § 1125(a)(1)(A).  "Commerce" as defined in the Lanham Act includes interstate commerce and intrastate commerce that has a substantial effect on interstate commerce. *See Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15CV307DAK, 2017 WL 3995558, at *4 (D. Utah Sept. 8, 2017) (noting that although the Tenth Circuit has not interpreted the "in commerce" element, "other courts have held that infringing conduct can be intrastate as long as it has a substantial economic effect on interstate commerce.") (citations omitted); *see also Raptor Educ. Found. v. Rocky Mountain Raptor Program*, No. 10-CV-01222-WDM-MJW, 2010 WL 4537119,

at *1 (D. Colo. Nov. 3, 2010) (collecting cases).  Thus, Plaintiff must allege that Defendants used photographs of its work "in commerce" or that Defendants' use of those photographs had a substantial effect on interstate commerce.

Defendants argue that Plaintiff cannot satisfy the interstate commerce requirement under the Lanham Act, as Plaintiff's stated market in the Tulsa metropolitan area is 'clearly not interstate." (Docket No. 24 at 5-6).  Plaintiff refutes Defendants' argument as "unduly narrow" and argues it has sufficiently alleged the "commerce" requirement by demonstrating that its marketing efforts and services "extend beyond the Oklahoma border and 'substantially affect' interstate commerce." (Docket No. 25 at 6-9).  However, the analysis does not turn on whether Plaintiff operates intrastate or interstate but whether Plaintiff alleges that Defendants' infringing conduct occurred in interstate commerce or had a substantial effect on interstate commerce.  *See* 15 U.S.C. § 1125(a)(1)(A).

### a.  *Plaintiff's Interstate Operations*

While Plaintiff has alleged that it performs services "throughout the Tulsa metropolitan area," it has also alleged that it "regularly engaged" with another company to perform out-of-state services and has several out-of-state clients.  (Docket No. 19 at 3-4).  From those facts alone, Plaintiff clearly operates "interstate" by performing services beyond Tulsa and the Oklahoma border.  *See id.*  Further, Plaintiff has alleged that through its website, marketing efforts, and "Google Ad Search Campaign," it is able to reach potential customers throughout the United States.  *Id.* at 3.  Thus, Plaintiff's stated market is not limited to the Tulsa Metropolitan area but operates interstate.

### b. *Defendants' Use of Plaintiff's Work in Commerce*

Additionally, Plaintiff must sufficiently allege that Defendants' misrepresentation of Plaintiff's services as their own was used in commerce to satisfy the "use in commerce" requirement. *See* 15 U.S.C. § 1125(a)(1)(A). In the Amended Complaint, Plaintiff alleges that Defendants used photographs of Plaintiff's work on public websites, representing that work as their own. (Docket No. 19 at 13). As previously determined by the Tenth Circuit Court of Appeals, the internet is "generally an instrumentality of interstate commerce." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008). Thus, Plaintiff's allegations that Defendants used photographs of its work on public websites constitutes a "use in commerce" satisfying the "in commerce" element of its Lanham Act claim. *See id.*

Moreover, Defendants' alleged actions in misrepresenting Plaintiff's work as their own on public websites may affect Plaintiff's acquisition of clients by "influencing" individuals across the nation to hire Defendants instead of Plaintiff, which could create a substantial effect on interstate commerce. Therefore, the Court finds that Plaintiff has sufficiently alleged the interstate commerce element to satisfy the "jurisdictional predicate" for its claim under the Lanham Act. *See Raptor Educ. Found.*, 2010 WL 4537119, at *1.

### 2. Pleading Requirements for a Reverse Passing Off Claim

Defendants also argue that Plaintiff's claim fails to satisfy the Lanham Act's requirements of "distinctiveness, secondary meaning, and confusion." (Docket No. 24 at 6). In response, Plaintiff contends that the requirements have no bearing on the Court's analysis of its Lanham Act claim, because they do not apply to Plaintiff's claim for "reverse passing off." *Id.* at 10-12. Rather, Plaintiff asserts that it has alleged that Defendants posted photos of Plaintiff's projects on the

internet and passed off Plaintiff's work as their own, thereby stating a plausible claim for reverse passing off.  *Id.* at 12.

The Court agrees with Plaintiff.  As stated, reverse passing off occurs when a person "misrepresents someone else's goods or services as his own."  *John Bean Techs. Corp.*, 480 F. Supp. 3d at 1303.  Here, Plaintiff has alleged that Defendants misrepresented Plaintiff's work as their own when it posted Plaintiff's work on public websites.  (*See* Docket No. 19 at 13). Accepting such allegations as true, Defendants may face liability for reverse passing off by misrepresenting Plaintiff's services as their own and offering such services for sale on the internet. *See e.g., Hix Corp. v. Nat'l Screen Printing Equip. Inc.*, 108 F. Supp. 2d 1204, 1208 (D. Kan. 2000) (finding that "defendants may be liable for reverse passing of by "offering for sale" a slightly modified version of plaintiff's mug press.").

Moreover, a reverse passing off claim does not require "distinctiveness, secondary meaning, and confusion."  Rather, a plaintiff must demonstrate the following: "(1) that the work at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."  *John Bean Techs. Corp.*, 480 F. Supp. 3d at 1304 (citations omitted).  Here, Defendants do not argue that Plaintiff failed to plead the aforementioned factors but instead focus on inapplicable requirements for a reverse passing off claim.[5]  Thus, Defendants' argument is misplaced as it conflates the elements

---

[5] Defendants rely on cases that neither involve a reverse passing off claim nor provide instructive analysis for this Court to assess whether Plaintiff has sufficiently pleaded its claim.  (*See* Docket No. 24 at 3-5).  Specifically, Defendants rely on *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205 (2000); *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844 (1982); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir. 1987); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000); and *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023).

of a reverse passing off claim with other Lanham Act claims, such as trademark infringement. As such, this Court declines to impose such requirements absent legal authority instructing it to do so. Accordingly, the Court finds that Plaintiff has plausibly alleged its reverse passing off claim under the Lanham Act.

## B.    Defend Trade Secrets Act

Defendants also seek dismissal of Plaintiff's DTSA claim, arguing that the DTSA does not apply because it is a "criminal statute" that relates to activities that affect interstate or foreign commerce, and Plaintiff has failed to establish that its business is interstate in nature. (Docket No. 24 at 6-7). The DTSA provides that the "'owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'"[6] *Tri-State Floors, Inc. v. Old Rule Servs., LLC*, No. 19-CV-707-JFH-JFJ, 2022 WL 4653717, at *7 (N.D. Okla. Sept. 30, 2022), quoting 18 U.S.C. § 1836(b)(1). "To establish a claim under the DTSA, [a] plaintiff must demonstrate: (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1087 (10th Cir. 2025) (quotation omitted); *see also Traditions Health, LLC v. Huffman*, No. 24-CV-0163-CVE-MTS, 2024 WL 5078110, at *7 (N.D. Okla. Dec. 11, 2024) (noting that to state a

---

[6] In their motion, Defendants cite to the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. § 1831 *et seq.*, which allows for federal criminal prosecution for the theft of trade secrets and conspiracies to steal trade secrets. (Docket No. 24 at 6-7), citing 18 U.S.C. § 1832. However, "Congress passed the [DTSA in 2016,] which amended the [EEA] to provide a private right of action" to bring a civil claim for theft of trade secrets under certain circumstances. *Credit Sage LLC v. Credit Wellness LLC*, No. 1:23-CV-110-SWS, 2024 WL 99474, at *10 (D. Wyo. Jan. 9, 2024) (citation omitted); *see also Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017) (noting that the DTSA "provides a private cause of action against those who have misappropriated trade secrets related to a product or service intended for interstate commerce."), citing 18 U.S.C. § 1836(b)(1).

9

claim under the DTSA, a plaintiff must allege "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without plaintiff's consent; and (3) the individual acquiring, using, or disclosing the trade secret knew of should have known that the trade secret was acquired by improper means."), quoting *API Ams. Inc. v. Miller*, 380 F. Supp. 3d 1141, 1147-48 (D. Kan. 2019).

Plaintiff asserts that the Amended Complaint sets forth factual allegations "that its marketing and performance of its services 'substantially affect' interstate commerce" through "the exchange of information with clients and potential clients who reside out of state."[7] (Docket No. 25 at 15). Upon review, the Court finds the Amended Complaint outlines Plaintiff's internet marketing efforts to reach potential customers throughout the United States and that through such efforts, it has multiple out-of-state clients. (Docket No. 19 at 3). Moreover, the Amended Complaint identifies what types of confidential information Plaintiff "maintained . . . regarding its customers and prospective customers that was not readily available to its competitors[.]" *Id.* at 19. Further, it includes allegations that such confidential information constituted trade secrets, that Defendants knowingly misappropriated and wrongfully used, and that many of the trade secrets allegedly misappropriated by Defendants relate to services that Plaintiff provides to its customers. *Id.* at 19-20.

Like other courts that have addressed the sufficiency of the interstate commerce nexus with the services, information, or products allegedly misappropriated, this Court finds the allegations in the Amended Complaint are sufficient to satisfy the interstate commerce requirement under the

---

[7] As pointed out by Plaintiff, Defendants only challenge whether the alleged trade secrets implicate interstate commerce. (Docket Nos. 24 at 6-7; 25 at 14). As such, the Court only addresses whether Plaintiff alleges sufficient facts to establish that the alleged trade secrets relate to a product or service in or intended for interstate commerce.

10

DTSA. *See Traditions Health*, 2024 WL 5078110, at *7 ("Courts have found that products or information that are intended to be used across multiple states as part of the plaintiff's business operations can satisfy the 'relation to interstate commerce' requirement for a DTSA claim."), citing *Luckyshot LLC v. Runnit CNC Shop, Inc.*, No. 19-cv-03034-RBJ, 2020 WL 5702281, at *5 (D. Colo. Sept. 24, 2020) (finding alleged trade secrets implicate interstate commerce when complaint included allegations that plaintiff sold its products in interstate commerce, its largest customer was out of state, and it hired an out-of-state company to produce drawings of its products); *Video Gaming Tech., Inc. v. Castle Hill Studios LLC*, No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *6 (N.D. Okla. July 17, 2018) (finding the DTSA's interstate commerce requirement was satisfied when plaintiff alleged that the trade secrets were "related to products and services used in interstate commerce because [plaintiff's] games were designed, developed, marketed, leased and used across multiple states"). Accordingly, Defendants' motion is denied as to Plaintiff's DTSA claim.

## Conclusion

For the reasons set forth herein, the Motion to Dismiss Amended Petition (Docket No. 24) filed by Defendants 600Monkeys Pool Leak Detection and Repair, LLC, James Thalacker, and Jade Brewer is hereby **DENIED**.

**IT IS SO ORDERED** this 18th day of June, 2026.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT